## THE NEW YORK MARINE NO. 10.
### In re LIGHTERAGE HOLDINGS, Inc.

District Court, S. D. New York.
July 14, 1938.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Leo Hanan, both of New York City, of counsel), for New York Marine No. 10.

Otto & Easterday, of New York City (Henry E. Otto and Samuel C. Otto, both of New York City, of counsel), for William M. Murphy, as Owner of the Coughlin.

Purdy & Lamb, of New York City (Frank C. Mason and Edmund F. Lamb, both of New York City, of counsel), for claimant George Weightman.

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for claimant McNall.

Warburton & Sevin, of New York City (George Warburton, of New York City, of counsel), for claimant Tucker.

Edmond B. Butler, of New York City, for claimant General Chemical Co.

COXE, District Judge.

These are separate limitation proceedings (1) by Lighterage Holdings, Inc., owner and debtor in possession, and Canal Operating Co., Inc., charterer, of the tug New York Marine No. 10, and (2) by William M. Murphy, owner of the tug C. F. Coughlin.

The proceedings grow out of a collision in the Erie Canal, near Tonawanda, N. Y., on Sept. 11, 1937, between the barge Raymond Tucker, the head barge in tow of the Marine No. 10, and the barge M. M. Pease, the head barge in tow of the C. F. Coughlin. As a result of the collision the barges Raymond Tucker and M. M. Pease were injured; also, the barge William Weightman, the third barge in the Coughlin tow, sank, and a cargo of sulphur on board was damaged.

In the limitation proceeding relating to the Marine No. 10 various answers were interposed contesting the right of the petitioners to limit, but the only one of these answers pressed at the trial was by the owner of the barges William Weightman, Gertrude Weightman, and Matton No. 1, three of the four barges in the Coughlin tow, opposing the petition of Canal Operating Co., Inc. The right of Lighterage Holdings, Inc., to limit its liability was conceded.

In the proceeding with respect to the tug C. F. Coughlin, only one answer was filed contesting limitation. The right to limit was, however, conceded by this answering claimant at the trial.

The collision occurred on Sept. 11, 1937, at 5:30 A. M. Daylight Time. It was then dark and slightly overcast, but the visibility was good. The current in the canal was easterly, with a velocity variously estimated at from ¼ of a mile to 1½ miles an hour.

The tug C. F. Coughlin was bound west from Troy to Buffalo, in tow of four barges, the M. M. Pease, Matton No. 1, William Weightman and Gertrude Weightman. The barges were loaded with sulphur, and arranged tandem, close together, in the order named, with two hawsers of about 100 feet each, leading from the head boat to the stern of the tug. They were all similar in construction, had a draft of about 10 feet, and were about 108 feet long and 22 feet wide. The wheeling was done from the Matton No. 1, the second barge in the tow.

The Marine No. 10 left Tonawanda, N. Y., at 4:15 A. M. Daylight Time, on the day of the collision, bound east for Albany. She had in tow tandem three barges, namely, the Raymond Tucker, Thomas Tucker and Mary O'Connor, made up in that order. The two head barges were harbor boxes, 116 to 120 feet long and 30 or 32 feet wide; the last barge was a small canal boat. The were all loaded to a depth of 8½ to 9 feet. The wheeling was done from the Thomas Tucker, the second boat in the tow. There was a conflict in the testimony with respect to the hawsers, some of the witnesses saying that they were 90 to 100 feet in length, while others insisted that they were 150 to 180 feet long.

There is a bend in the canal just west of Buoy No. 339.2; for a vessel proceeding west this bend is to the left, and for a vessel proceeding east, to the right. The bend occurs a short distance west of the westerly end of the State Park, which is located on the southerly side of the canal. Each tug sounded the usual bend signal approaching the bend. The Coughlin was then at the easterly end of the State Park and about in midstream. A little later, the

reflection of the lights of the Marine No. 10 were seen in the bend. The engines of the Coughlin were thereupon slowed, and the tug blew for sides. This signal was immediately answered by the Marine No. 10, whereupon the Coughlin eased over to the northerly bank and again checked her speed.

The testimony was overwhelming that at the time of the collision the entire Coughlin tow was close to the northerly bank in the straightaway stretch east of the bend. The tug itself was east of Buoy No. 339.2 and making little if any headway; the barges were directly in line behind; and the distance of the barges off from the northerly bank was variously estimated at from 20 to 25 feet. The only witness who testified at all to the contrary was Desnoyers, the mate of the Marine No. 10, who said that his tug was 40 feet west of Buoy No. 339.3 at the time of the collision; yet Desnoyers admitted on cross-examination that the Coughlin was then slowed down well over on her own side of the channel, and that he could find no fault with her. Meehan, captain of the Raymond Tucker, the head barge in the Marine No. 10 tow, said that the collision took place on the straightaway and not in the bend. Similar testimony was given by Gooley, captain of the Mary O'Connor, the last barge in the Marine No. 10 tow.

The Marine No. 10 had been running at full speed before the bend signal was given, but when it was given the engines were slowed. There were various estimates of the speed from there on, ranging from 2 to 4 miles an hour over the ground. The Coughlin was first sighted when the sides whistles were exchanged. The Marine No. 10 was then entering the bend. Soon afterwards, the helm was changed to make the swing around the bend, and the barges were carried by the current on a wide sweep into the northerly portion of the canal. What subsequently transpired can better be told in the language of Meehan, the captain of the Raymond Tucker, who was at the wheel of the Thomas Tucker at the time of the collision. He testified as follows:

"Well, we were coming around the bend when Marine No. 10 got about opposite the Coughlin. We slowed down and then when I slowed down the hawser slacked up and she made kind of a sheer to the north bank; my boat, the Raymond Tucker; and then

I steered the wheel and tried to get her over to starboard and I couldn't get her over fast enough. She was too far over going around that turn."

Gooley, the captain of the Mary O'Connor, corroborated this testimony. He said that the tow was kinked at the bend, and that the wheelsman "could not get out of it". He further testified that the tow was through the bend when the collision took place.

The Marine No. 10 passed the Coughlin with a clearance of 25 or 30 feet, and Desnoyers, the mate of the Marine No. 10, admitted that this "ought to be enough for any man". The Raymond Tucker came in on an angle, and, after brushing along the port hawser of the Coughlin, struck the port bow of the M. M. Pease, overlapping her bow about 6 or 7 feet. The damage to the Raymond Tucker was on the port corner and one-third of the way across the bow, also on the starboard side of the stern, indicating that the tow of the Marine No. 10 was kinked slightly to starboard.

I think the Marine No. 10 was solely at fault for the collision. The Coughlin tow held back at the bend to allow the Marine No. 10 tow to pass; there was admittedly sufficient room in the straightaway for such a passing; and the great weight of the testimony points unmistakably to the conclusion that the Raymond Tucker, after making the bend, sheared directly into the M. M. Pease. There are two explanations of this sheer; one, as testified to by Meehan, that the Marine No. 10 slowed down just before the collision, causing an unexpected slacking of the hawsers; and the other, as testified to by Costello, that there was no deckhand on the tug tending the hawsers as the tow proceeded around the bend. But whatever the cause of the sheer, I am satisfied that the fault of the Marine No. 10 has been clearly shown.

It remains to consider whether Canal Operating Co., Inc., charterer of the Marine No. 10, is entitled to limitation of liability. The principal contention in opposition is that Costello, the deckhand on watch on the tug at the time of the collision, was entirely incompetent. It is also insisted that there was no second deckhand in the crew, and that the tug was undermanned to that extent.

Costello testified that he joined the Marine No. 10 at New York on Aug. 3, 1937; he was then only 19 years old, and had had no previous experience on tugs. John N. Desnoyers, master of the Marine No. 10, admitted frankly that he was not an "experienced man". This is amply borne out by Costello's own testimony, for he said that at the time of the collision he was not at the hawsers but was hoisting ashes in the middle of the tug. His proper place at that time was clearly at the hawsers, and I have no doubt that his failure to be there was a contributing cause of the collision.

With respect to Ingleston, the second deckhand, I am satisfied that he was not on the Marine No. 10 at all at the time of the collision. Ingleston was a most unsatisfactory witness. He said that he lived at Baldwinsville, and joined the tug on the trip west; also, that he was in bed at the time of the collision. He had no recollection, however, of anything that took place, and I do not think that his testimony is entitled to any weight. Gooley, the captain of the Mary O'Connor, testified positively that Ingleston did not join the tug until 4 or 5 days after the collision; he said, also, that he saw him come on board at that time at Baldwinsville, and that he helped him with his suitcase. Costello, the other deckhand, corroborated this testimony.

I think that Canal Operating Co., Inc., charterer of the Marine No. 10, is chargeable with knowledge of the incompetency of Costello. He joined the tug in New York, and Carine, the dispatcher and hirer of crews for the company, knew that he was a member of the crew at that time. Tucker, the company's agent at Buffalo, had similar knowledge when the tug left there, just prior to the collision. These men had managerial functions, and their knowledge is attributable to the company. I am satisfied, therefore, that the petition of the Canal Operating Co., Inc., to limit its liability should be denied.

There may be decrees holding the tug New York Marine No. 10 solely at fault for the collision; denying the petition of Canal Operating Co., Inc., for limitation of liability; sustaining the similar petition of Lighterage Holdings, Inc.; and exonerating the tug C. F. Coughlin; all with costs to the successful parties.